NO. 2018-1922

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————————

ATEN INTERNATIONAL CO., LTD.,

*Plaintiff-Appellee,*

*v.*

UNICLASS TECHNOLOGY CO., LTD., ELECTRONIC TECHNOLOGY CO., LTD., AIRLINK 101, PHOEBE MICRO, INC., BROADTECH INTERNATIONAL CO., LTD. D/B/A LINKSKEY, BLACK BOX CORPORATION, BLACK BOX CORPORATION OF PENNSYLVANIA,

*Defendants-Appellants.*

———————————————

Appeal from the United States District Court for the
Central District of California in No. 2:15-cv-004424, Judge Andrew J. Guilford

———————————————

## CORRECTED OPENING BRIEF FOR APPELLANTS

———————————————

Robert E. Aycock
Joseph G. Pia
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
(801) 350-9000

*Counsel for Appellants*

November 2, 2018

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Appellants certifies the following:

1. The full name of every party represented by us is:

   - Uniclass Technology Co., Ltd.
   - Electronic Technology Co., Ltd.
   - Airlink 101
   - Phoebe Micro, Inc.
   - Broadtech International Co., Ltd. d/b/a Linkskey
   - Black Box Corporation
   - Black Box Corporation of Pennsylvania

2. The names of the real party in interest represented by us are:

   - Uniclass Technology Co., Ltd.
   - Electronic Technology Co., Ltd.
   - Airlink 101
   - Phoebe Micro, Inc.
   - Broadtech International Co., Ltd. d/b/a Linkskey
   - Black Box Corporation
   - Black Box Corporation of Pennsylvania

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

   - <u>Dongguan Uniclass</u> = Uniclass Technology Co., Ltd., Electronic Technology Co., Ltd.
   - <u>Phoebe Micro, Inc.</u> = Airlink 101
   - <u>BBox Holding Company</u> = Black Box Corporation, Black Box Corporation of Pennsylvania

4. The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

- <u>Pia Anderson Moss Hoyt</u>: William B. Chadwick, Brody N. Miles
- <u>Pacific Law Group</u>: Jen-Feng Lee, Kenneth K. Tanji, Jr.
- <u>Workman Nydegger</u>: Matthew A. Barlow
- <u>Scheef & Stone</u>: Eric C. Wood.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal (*see* Fed. Cir. R. 47.4(a)(5) and 47.5(b)) are:

   *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.,* Federal Circuit Appeal No. 18-1606.

Dated: November 2, 2018                    */s/ Robert E. Aycock*

                                           Robert E. Aycock
                                           *Counsel for Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ...................................................................v

STATEMENT OF RELATED CASES ................................................... vi

JURISDICTIONAL STATEMENT ..................................................... vii

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF CASE ........................................................................2

    I.    The Parties ...............................................................................2

    II.   Background and Procedural History .........................................3

          A.    Uniclass' Motion for Summary Judgment on Lost Profits ..............5

          B.    Settlement Discussions.......................................................6

    III.  Trial.........................................................................................7

          C.    ATEN's Expenditures on Expert Witnesses ...................................7

          D.    The District Court's Statements Regarding the Disproportionality of the Case ........................................7

          E.    The Jury Verdict.................................................................9

    IV.  Section 285 Fees Briefing ......................................................10

SUMMARY OF ARGUMENT ............................................................11

STANDARD OF REVIEW ..................................................................13

ARGUMENT ......................................................................................15

    I.    It was error for the district court to not find the case exceptional where it recognized that ATEN's manner of litigation stood out from others and was unreasonably disproportionate to the potential recovery at trial. ..............................................................................15

          A.    ATEN's disregard for the policy of proportionate litigation is exemplified by its spending far more on expert witnesses and attorneys than it could have recovered at trial. ...............15

B.  After observing ATEN's disproportionate litigation motivated by revenge, the district court exclaimed that it "ha[d] just never seen anything like this." ..................................................................17

C.  ATEN admitted that its disproportionate litigation was motivated by revenge and improper market suppression rather than legitimate patent infringement claims. ...................................20

D.  It was error for the district court to ignore its own conclusions and find that ATEN's disproportionate litigation and trial behavior did not make the case stand out from others...................21

II.  ATEN's nuisance value damages claim could not justify the disproportionate expenditure of judicial and party resources. .................22

A.  ATEN's lost profits claim was knowingly baseless, brought in bad faith, and rejected at summary judgment. ...............................22

B.  ATEN's royalty claims amounted to nuisance values highlighting its disproportionate litigation tactics and revealing its revenge agenda. .......................................................................25

C.  ATEN filed and maintained its lawsuit against Uniclass' customers through trial despite minimal reasonably royalty damages at stake.............................................................................26

CONCLUSION AND RELIEF SOUGHT ...........................................................27

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*AdjustaCam, LLC v. Newegg, Inc.*,
  861 F.3d 1353 (Fed. Cir. 2017) ............................................... 21, 22, 23
*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .............................................................. 14
*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999) ................................................ 25
*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S. Ct. 1744 (2014) .................................................... 13, 14, 22
*Insite Vision Inc. v. Sandoz, Inc.*,
  783 F.3d 853 (Fed. Cir. 2015) ................................................. 14
*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
  150 F.3d 1374 (Fed. Cir. 1998) ............................................... 14
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S.Ct. 1749 (2014) .................................................. 14, 15, 21, 22
*Panduit Corp. v. Stahlin Bros. Fibre Works*,
  575 F.2d 1152 (6th Cir. 1978) ................................................ 24
*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ............................................... 14
*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
  2015 WL 12733442 (C.D. Cal. Mar. 10, 2015) .................................. 20

## Statutes

35 U.S.C. § 285 .......................................................... passim

## Rules

Fed. R. Civ. P. 1 ........................................................... 15
Fed. R. Civ. P. 26(b)(1) .................................................... 15

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellants certifies that an appeal from the same civil action in the lower court is currently pending before this Court: *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.,* Federal Circuit Appeal No. 18-1606. These appeals are to be considered companion cases and are assigned to the same merits panel for oral argument. Dkt. 2.

# JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The district court denied Uniclass' motion for attorneys' fees in an Order issued on March 30, 2018. Appx1. On April 30, 2018, Uniclass timely appealed this decision under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4. Appx476. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a) because the appeal is from a final decision of a district court in an action where jurisdiction was based on 28 U.S.C. § 1338(a).

## STATEMENT OF THE ISSUES

1. Whether it was an abuse of discretion for the district court to not find the case exceptional under 35 U.S.C. § 285 as a case that "simply [] stands out from the others," where the district court:

    (a)   concluded that it "ha[d] just never seen anything like" ATEN's disproportionate litigation behavior which had culminated in a two-week trial against ATEN's competitors for nuisance values compared to the millions of dollars spent in legal and expert witness fees;

    (b)   recognized that ATEN's litigation behavior was motivated by revenge and animosity against Defendants rather than legitimate legal theories; and,

    (c)   rejected the only basis that could have justified ATEN's expensive litigation, *i.e.*, ATEN's lost profits damages claim, because it was based on "multiple layers of guesswork" and "d[id] not embody the use of sound economic principles," leaving a reasonable royalty theory that resulted in a  damages request that was not proportionate to the expenses of litigation.

# STATEMENT OF CASE

## I.    THE PARTIES

The parties to the underlying lawsuit are involved in making and selling keyboard-video-mouse ("KVM") switch systems that allow a single user to control multiple computers from a single keyboard, video device, and mouse. ATEN International Co., Ltd. ("ATEN") is the leading player in this market with 1,700 employees across multiple offices, an annual revenue of about $160 million, and approximately 60% of the global consumer KVM switch market, by shipment volume. Appx1261; Appx1264; Appx752 at 42:15-18; Appx759 at 69:2-7.

Uniclass Technology Co., Ltd. and Electronic Technology Co., Ltd. of Dongguan Uniclass (collectively "Uniclass") also compete in the KVM market and have about 145 employees, averaging $1.6 million in U.S. sales annually. Appx984 at 79:15-18; 80:22-81:1. There are other competitors in the market, including Avocent, Raritan, and Belkin. Appx1261.

The defendants in the underlying case also included several of Uniclass' customers that purchased Uniclass KVM switches accused of infringement: Airlink 101, Phoebe Micro Inc., Broadtech International Co., Ltd., d/b/a Linkskey, Black Box Corporation, and Black Box Corporation of Pennsylvania (collectively the "customer defendants").

2

## II.   BACKGROUND AND PROCEDURAL HISTORY

In 2008, ATEN sued several competitors, including Belkin, in the Central District of California ("CDCA") for patent infringement. *See ATEN Int'l Co. Ltd., et al. v. Emine Tech Co., Ltd, et al.*, No. 09-cv-0943-AG (C.D. Cal. 2009) ("Belkin Litigation"). After the CDCA construed the claims and one of the patents entered a reexamination, ATEN dropped its lawsuit and provided a royalty-free license to Belkin. Appx104 at ¶ 122; Appx779 at 10:19-13:2.

Before settling its litigation with Belkin, ATEN also threatened a patent infringement lawsuit against Uniclass for the same patents it had asserted in the Belkin Litigation and for which it had offered a royalty-free license to Belkin. Appx761-762 at 79:19-82:1; Appx101 at ¶ 110. Rather than incur the costs of litigation, Uniclass entered into a license agreement with ATEN in May 2009. Appx987 at 91:19-24; Appx1229-1237. In 2011, Uniclass learned of the claim construction order in the Belkin Litigation and Belkin's royalty-free license and believed it no longer had obligations under the license. Appx986-987 at 88:18-91:24.

On August 6, 2014, ATEN filed a patent infringement case against the Appellants in the Eastern District of Texas ("EDTX") and asserted some of the same patents that been construed by the CDCA in the Belkin Litigation and that had been part of the royalty-free license to Belkin. Appx8. Through its complaint and its infringement contentions required by the EDTX Local Patent Rules, ATEN accused

3

over 125 of Appellants' products of infringing 72 patent claims from six patents. Appx490-505; Appx648-649. The case was eventually transferred to the CDCA. Appx22.

During the underlying litigation, ATEN appointed eight law firms and changed lead trial counsel more than five times, often at critical junctures. From the filing of the case through claim construction briefing in the Eastern District of Texas, ATEN was represented by Fish & Richardson. Appx260 at ¶ 56. With its first counsel ATEN conducted significant discovery on multiple continents, including fact witness depositions in Taiwan and initial source code review, at great expense to Appellants. *Id.* Shortly after the underlying case was transferred to the Central District of California, and ATEN replaced its counsel with Orrick, then Holland & Knight, and then Farney Daniels. *Id.* at ¶ 54. ATEN's rapid changes in counsel required additional expenditure by Appellants to help ATEN's counsel get up to speed on all issues including status of fact and expert discovery and source code review. Appx261 at ¶¶ 58-63. ATEN's changes in counsel lead to months of disputes and prolonged motion practice regarding source code review. Appx261-272 at ¶¶ 64- 116. ATEN changed counsel yet again right before trial and hired its current law firm, Mei and Mark. Appx260 at ¶ 54.

### A. **Uniclass' Motion for Summary Judgment on Lost Profits**

Before trial, Uniclass filed a motion for summary judgment to preclude ATEN's pursuit of lost profits damages. Appx44. Uniclass offered two primary arguments: (1) ATEN's damages expert—Mr. Jeffrey Snell—failed to make an adequate market-share analysis; and (2) ATEN could not satisfy the second *Panduit* factor, the absence of noninfringing alternatives. The district court granted summary judgment, finding that "ATEN did not undertake a meaningful market analysis that would support a lost profits calculation." Appx130.

Regarding ATEN's lost profits claim against Uniclass, the district court stated: "Uniclass and ATEN are not the only KVM switch manufacturers that compete in the KVM switch original equipment manufacturer ("OEM") market in the United States." Appx139. After noting Mr. Snell's statement that he "ha[d] not been able to identify market share data that would allow [him] to estimate the portion of sales that ATEN would have made," the district court characterized his analysis:

> To address the lack of actual market share data, Snell uses an "alternative method" to estimate the portion of accused sales that ATEN would have allegedly made. With the help of the Head of ATEN's OEM department, C.H. Chen, he "mapped" ATEN products to corresponding accused Uniclass products. In Snell's expert report, he states, "[f]or accused products that were mapped to ATEN products, I assumed that ATEN likely would have made these sales based on my understanding from Mr. Chen, who indicated that ATEN and Uniclass have been the dominant suppliers in [the U.S. KVM OEM market]." In essence, Snell equates his nomenclature of "dominant suppliers" with a "two-supplier" market without independent support and makes an

5

>assumption that ATEN's actual products are sufficiently similar to
>Un[i]class's products that they may be swapped in the marketplace.

Appx139-140. (citations omitted). The district court found that Mr. Snell's "approach does not embody the use of sound economic principles because it does not properly account for the other competitors in the 'but for' market" and incorporated "multiple layers of guesswork." Appx140.

Likewise, the district court found that "ATEN's mapping theory suffers from the same flaws as its two-supplier market theory," in that Mr. Snell "relied solely on ATEN to decide which of ATEN's products are sufficiently similar to Uniclass products to essentially swap them out in the market." *Id.* The district court found that ATEN's mapping "assumes that no other OEMs have similar products." *Id.*

Ultimately, the district court granted Uniclass' motion for summary judgment as to ATEN's lost profits claim, holding that "ATEN has not met its burden to provide a basis for concluding that any sales of Defendants would be sales of ATEN in the 'but for' market" and thus "cannot meet the reasonable probability standard for establishing lost profits." Appx141.

## B. Settlement Discussions

Without a lost profits claim, ATEN's only available recovery was through reasonably royalty damages. Uniclass presented numerous settlement offers to resolve the case. Appx278 at ¶¶ 153-155. ATEN countered with settlement demands that far exceeded what it claimed to be a reasonable royalty, even under an enhanced

damages theory, and demanded a permanent injunction on the remaining accused products and an injunction on products that the district court had stricken from the case. *Id.* In other words, ATEN refused to settle the case against its competitor unless it received more than its maximum potential recovery at trial. Uniclass was unable to accept that counteroffer, and the parties moved towards trial.

## III. TRIAL

### C. <u>ATEN's Expenditures on Expert Witnesses</u>

The seven-day jury trial began on September 19, 2017. Appx686. The Jury heard testimony from corporate representatives, technical experts, and damages experts on both sides. ATEN's damages expert testified that the maximum reasonable royalty damages that ATEN could be awarded was $678,337. Appx932 at 90:14-15. ATEN's technical expert testified that he believed that he had billed over $400,000 for his work in the case, which amount did not include amounts for his two assistants. Appx902 at 7:20-8:4. ATEN's damages expert testified that his firm had billed over $300,000 in this litigation. Appx970 at 23:8-11. Neither of these figures include the experts' trial time.

### D. <u>The District Court's Statements Regarding the Disproportionality of the Case</u>

The district court made numerous comments on the record regarding how much ATEN had spent and how much time and public resources were being spent on this case, particularly considering the low damages request.

I do think – and I keep asking people. I'll ask you about it. We're asking a lot of these citizens. We're asking a lot of this courtroom. We're asking a lot of free services to be provided to you, and I'm not sure it makes sense to be providing free services of $700,000 in a $650,000 case. I don't know why this case hasn't settled. I don't know why [ATEN] has spent over $400,000 on one expert. That makes me exceedingly cautious about how much I allow you to use this courtroom and this jury.

Appx955 at 14:16-24.

The district court asked ATEN's counsel to explain why so much had been spent on such a small case:

Can you explain why that would happen? I mean if you were to say, oh, he now understands the technology and he's going to be a permanent employee, but I just don't understand $400,000 in a $650,000 case. When I was a lawyer, if I did that, I would be fired, or frankly, I'd be working for a client who said: They are competitors. Spend every penny. What's going on here?

Appx955-956 at 12:15-13:7. ATEN's counsel responded:

It's the last, Your Honor. These two parties are competitors. And as you heard during the testimony so far and I think you'll hear some more this week about that agreement that was stopped payment on. I won't say breach, but there was the stop payment on, and there's I think some animosity here.

It's unfortunate that it has come to this point, but the parties are strong competitors in this KVM OEM market, and they see this as being an important, you know, statement against each other . . .

Appx956 at 13:8-17. In response, the district court said, "this is a courtroom that resolves disputes and doesn't necessarily vindicate revenge amongst competitors."

*Id.* at 13:20-21.

Later in the trial, the district court revisited its inquiry regarding the proportionality of the case:

> ". . . [T]he recent changes to the rules of civil procedure require me to look at proportionality. . . . I'm just not understanding this case at all, and I'm concerned that the judge in this case is not following the requirements of proportionality."

Appx1052 at 73:19-25. The district court asked ATEN's counsel if it was aware of the rules concerning proportionality and if it had any suggestions on how the court should deal with proportionality in a seven-day trial over ATEN's $650,000 damages claim. Appx1053 at 80:17-22. After hearing ATEN's counsel's response, the district court stated, "I have concern about what we're doing in this case. I really do." Appx1054 at 81:7-8.

Later, the district court again remarked on the disproportionate fees being spent in the case:

> THE COURT: I'm wondering – we're debating between 650 [thousand] and 75,000 [dollars]; right? We've got at least five attorneys over here on [ATEN's] side. I don't know what their average billing rate is. Gosh, this doesn't seem to be effective. I have just never seen anything like this . . . . I just – we're spending so much time on this. . . . At least five attorneys, how much is that an hour as this court progresses? So how much more time do you need with this witness so we can debate whether it's 75 or 650 [thousand dollars]? That's sure a lot of time. . . .

Appx1153 at 102:15-25.

### E. **The Jury Verdict**

After three days of deliberation, the Jury returned a verdict that Appellants did not infringe any claims of any of the asserted patents and that two of ATEN's

asserted patents were invalid and a final judgment followed shortly thereafter. Appx201-211. ATEN filed a renewed motion for JMOL, and the district court reversed the Jury's finding of invalidity as to one of the patents. ATEN appealed various other aspects of the Jury verdict, and that appeal is pending before the court and has been designated as a companion case to this one. *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.,* Federal Circuit Appeal No. 18-1606; Dkt. 2.

## IV.   SECTION 285 FEES BRIEFING

Uniclass timely filed its motion for a finding of exceptionality and fees under 35 U.S.C. § 285 on January 16, 2018.[1] Uniclass argued that ATEN did not conduct an adequate pre-filing investigation as demonstrated by the overbroad nature of the contentions, the assertion of a knowingly unenforceable claim, the assertion of a patent invalidated by ATEN's own product, and the accusation of products based on the analysis of the incorrect product. Uniclass also argued that ATEN unnecessarily increased the costs of claim construction by attempting to forum shop, forcing wasteful claim construction in Texas after the case has been transferred to California, and attempting to relitigate settled claim terms. Uniclass argued that ATEN's numerous changes in counsel at critical junctures in the litigation led to loss of

---

[1] On January 17, 2018, Uniclass submitted a corrected notice of motion and motion. Appx212.

institutional knowledge and agreements between counsel, duplicative discovery, and prevented the case from being adequately narrowed.

ATEN filed its opposition on January 28, 2018. Appx416. Uniclass replied on February 12, 2018. Appx447. Oral argument was held before the district court on February 26, 2018. Appx1284. On March 30, 2018, the district court issued an order denying Uniclass' request for attorney's fees. Appx1. The district court only specifically addressed Uniclass' contention that ATEN had not performed an adequate pre-filing investigation and held that Appellants did not meet their burden on that argument. Appx5-6. The district court's order did not address its comments from trial or ATEN's damages model.

## SUMMARY OF ARGUMENT

The district court recognized the exceptional nature of ATEN's disproportionate litigation and trial behavior and ATEN's unreasonably weak litigating position regarding its damages claim but erred in failing to find the case exceptional.

ATEN violated the fundamental policy of proportionate litigation by spending more on its experts and attorneys than it could have recovered at trial. ATEN's two testifying experts alone admitted to billing ATEN over $700,000 for their combined work in this case. Appx902 at 7:20-8:4; Appx970 at 23:8-11. This disproportionate litigation forced the district court and the Appellants into three years of costly

11

litigation and a two-week trial over patent infringement claims that were—at most—$678,337 in reasonable royalty damages. Appx932 at 90:14-15.

The district court, shocked at ATEN's disproportionate litigation, remarked, "I have just never seen anything like this," (Appx1153 at 102:15-25) and that it was "exceedingly cautious" about letting ATEN continue to use public resources in such a disproportionate level compared to the damages at issue. Appx955 at 12:16-24. When asked why the case was being litigated in such an unreasonably disproportionate way, ATEN's counsel revealed that it was because the parties are competitors and there was "animosity." Appx956 at 13:8-17.

To sustain its revenge case against its competitor, ATEN presented a large lost profits claim despite its damages expert's opinion that he "ha[d] not been able to identify market share data that would allow [him] to estimate the portion of sales that ATEN would have made." Appx88 at ¶ 56. Without this necessary information, ATEN's expert attempted to fill the gaps by "mapping" Uniclass' products to ATEN's and concluding that ATEN would have made *every* sale that Uniclass had made, despite the existence of numerous other competitors in the market. Appx88-92 at ¶¶ 56, 64, 71; Appx139-140. The district court ultimately rejected ATEN's lost profits theory finding that it relied on "multiple layers of guesswork" and "d[id] not embody the use of sound economic principles." Appx140.

Without a lost profits claim, ATEN's only path to recovery was through a reasonable royalty. ATEN's royalty position was based on the unfounded assumption that the royalty rate from the 2009 license between ATEN and Uniclass was the result of a complete *Georgia-Pacific* analysis such that no further considerations needed to be made to identify whether the 2009 royalty was "reasonable." Appx973 at 34:17-35:2; Appx932-933 at 128:3-129:6; Appx981 at 68:1-12; The thrust of Mr. Snell's reasonable royalty theory was that a single license/settlement between Uniclass and ATEN in 2009 should be examined—rather than the half a dozen other relevant licenses and attempts to license. Appx925 at 97:15-18. With nothing to fall back on, Mr. Snell stated that he simply *assumed* that the parties had integrated a *Georgia-Pacific* analyses in negotiating the May 2009 license. Appx973 at 34:17-35:2. ATEN's unsupported royalty position was maintained against all Appellants, even though the maximum damages for at least one Appellant was as low as $261. Appx975 at 41:8-12.

## STANDARD OF REVIEW

This Court "review[s] all aspects of a district court's § 285 determination for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014). "The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law

13

or on a clearly erroneous assessment of the evidence.'" *Id.* at 1748 n.2 (quoting

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "A factual finding is

clearly erroneous if, despite some supporting evidence, we are left with the definite

and firm conviction that a mistake has been made." *Insite Vision Inc. v. Sandoz, Inc.*,

783 F.3d 853, 858 (Fed. Cir. 2015). A district court also abuses its discretion when

it makes a "clear error of judgment in weighing relevant factors." *Mentor Graphics

Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998)).

For a prevailing party to establish that it is entitled to attorney's fees for having

had to respond to an "exceptional" case under 35 U.S.C. § 285, the party need not

show that the opposing party engaged in bad faith litigation, made misleading

statements, or asserted meritless claims. *Octane Fitness, LLC v. ICON Health &

Fitness, Inc.*, 134 S.Ct. 1749, 1755 (2014). Rather, the prevailing party need only

show by a preponderance of the evidence that the case "stands out from others" with

respect to either the "substantive strength of a party's litigating position" or the

"unreasonable manner in which the case was litigated." *Id.* (emphasis added). In

addressing a § 285 motion, a district court should consider the "totality of the

circumstances," including the "need in particular circumstances to advance

considerations of compensation and deterrence." *Id.* at 1756 n.6 (emphasis added);

*see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). A §

285 attorney fee award is appropriate "when the losing party has acted in bad faith,

14

vexatiously, wantonly, or for oppressive reasons." *Octane Fitness*, 134 S.Ct. at 1758 (internal quotation marks and citation omitted).

# ARGUMENT

I. **IT WAS ERROR FOR THE DISTRICT COURT TO NOT FIND THE CASE EXCEPTIONAL WHERE IT RECOGNIZED THAT ATEN'S MANNER OF LITIGATION STOOD OUT FROM OTHERS AND WAS UNREASONABLY DISPROPORTIONATE TO THE POTENTIAL RECOVERY AT TRIAL.**

## A. ATEN's disregard for the policy of proportionate litigation is exemplified by its spending far more on expert witnesses and attorneys than it could have recovered at trial.

Federal courts have recently emphasized the need for proportionality between the expenses in civil litigation and the potential recovery. Requiring litigation to be proportionate to the relief sought ensures "just, speedy, and inexpensive determination" of cases in the United States District Courts. Fed. R. Civ. P. 1. One such embodiment of this proportionality principle is the December 2015 amendment to Federal Rule of Civil Procedure 26(b)(1) which provides that parties may only obtain discovery regarding relevant, non-privileged information if it is "proportional to the needs of the case" considering factors such as the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues.

ATEN's litigation behavior ran afoul of this foundational policy, resulting in unnecessarily high legal fees in relation to its nuisance value damages claim. To

begin, ATEN asserted 72 claims from six patents against over 125 of Uniclass' products. Appx490-505; Appx648-649. Most of these contentions were eventually dropped or dismissed. At trial, ATEN's damages expert admitted that at most ATEN was entitled to $678,337 in reasonable royalty damages. Appx923 at 90:14-15. Appellants' position was that damages would be $77,261, at most. Appx1137 at 21-24. The damages claim is less than each party spent on experts alone. Considering the limited damages at issue, Appellants tried to settle this suit several times to conserve the resources of the parties, the district court, and the jury. Appx278 at ¶¶ 153-54. However, ATEN sought a settlement exceeding what it could have potentially recovered at trial along with an injunction on all accused products, and remarkably, even on products that had been dismissed with prejudice from the case. *Id.* ATEN then attempted to leverage its untenable claims to exact a settlement well beyond what it could have gotten at trial, even if all its claims including lost profits had been resurrected. ATEN's strategy was crafted to ensure maximum cost and expense to both the parties and the district court—resulting in the district court's conclusion that it "had never seen anything like this." Appx1153 at 102:15-25.

The district court noted that ATEN expended more in expert witness fees alone (without including legal fees) than it could have ever hoped to recover at trial. Appx955-956 at 12:16-13:7. ATEN's technical expert confessed that he believed that he had billed over $400,000, including time spent preparing an expert report

almost 2,000 pages long, even after ATEN had issued two different prior reports each around 2,000 pages long. Appx902 at 7:20-8:4. ATEN's damages expert testified that his firm had billed over $300,000. Appx970 at 23:8-11. Combined, ATEN's expert fees amounted to over $700,000, not including the experts' trial time. This figure exceeds ATEN's maximum recovery at trial and does not include the time billed by Dr. Lavian's two assistants, ATEN's many different law firms over three years of litigation, and other unnecessary expenses occasioned by a scorched-earth approach to discovery and claim construction, nor the costs incurred in a two-week trial. Most importantly, it does not account for Appellants' commensurate costs.  When considered in its totality, this case stands out from the others where there is a tie to expenditures and legitimate damages sought. ATEN's insistence on outspending any possible recovery and taking unreasonable settlement positions is exceptional.

### B. <u>After observing ATEN's disproportionate litigation motivated by revenge, the district court exclaimed that it "ha[d] just never seen anything like this."</u>

Once ATEN finally demonstrated how small its damages request was, the district court was seriously troubled by the public resources being spent on the limited recovery at issue:

> I do think – and I keep asking people. I'll ask you about it. We're asking a lot of these citizens. We're asking a lot of this courtroom. We're asking a lot of free services to be provided to you, and I'm not sure it

makes sense to be providing free services of $700,000 in a $650,000 case.

Appx955 at 12:16-20. The district court further conveyed its confusion as to why ATEN was litigating in such a disproportionate manner and stated its concern over letting ATEN use public resources to continue its unreasonable litigation:

> I don't know why this case hasn't settled. I don't know why [ATEN] has spent over $400,000 on one expert. That makes me exceedingly cautious about how much I allow you to use this courtroom and this jury.

*Id.* at 12:20-24. The district court offered several explanations to ATEN's counsel, trying to understand why so much had been spent on such a small case:

> Can you explain why that would happen? I mean if you were to say, oh, he now understands the technology and he's going to be a permanent employee, but I just don't understand $400,000 in a $650,000 case. ***When I was a lawyer, if I did that, I would be fired***, or frankly, I'd be working for a client who said: They are competitors. Spend every penny. What's going on here?

Appx955-956 at 12:25-13:7, emphasis added.

ATEN's counsel confirmed that its disproportionate patent infringement litigation was not a result of a long-term investment in a new employee or inefficiency of counsel, but rather the result of an improper motive to harm a competitor that it believed to have breached a contract:

> ***It's the last, Your Honor***. These two parties are competitors. And as you heard during the testimony so far and I think you'll hear some more this week about that agreement that was stopped payment on. I won't say breach, but there was the stop payment on, and ***there's I think some animosity here***.

18

It's unfortunate that it has come to this point, but the parties are strong competitors in this KVM OEM market, and ***they see this as being an important, you know, statement against each other*** . . .

Appx956 at 13:8-17, emphasis added.

The district court responded with a stern warning: "this is a courtroom that resolves disputes and doesn't necessarily vindicate revenge amongst competitors." *Id.* at 13:20-21. Days later, the district court was still grappling with how to deal with ATEN's disproportionate litigation strategy:

". . . [T]he recent changes to the rules of civil procedure require me to look at proportionality. . . . I'm just not understanding this case at all, and I'm concerned that the judge in this case is not following the requirements of proportionality."

Appx1052 at 73:19-25.

The district court specifically asked ATEN's counsel if it was aware of the rules concerning proportionality and if it had any suggestions on how the court should deal with proportionality in a seven-day trial over $650,000. Appx1053 at 80:17-22. After hearing ATEN's counsel's response, the district court stated, "I have concern about what we're doing in this case. I really do." Appx1054 at 81:7-8.

Later, with ATEN's trial strategy on full display, the district court again expressed how rare and wasteful ATEN's trial behavior was:

THE COURT: I'm wondering – we're debating between 650 [thousand] and 75,000 [dollars]; right? We've got at least five attorneys over here on [ATEN's] side. I don't know what their average billing rate is. Gosh, this doesn't seem to be effective. ***I have just never seen anything like this*** . . . . I just – we're spending so much time on this. . . . At least five attorneys, how much is that an hour as this court

progresses? So how much more time do you need with this witness so we can debate whether it's 75 or 650 [thousand dollars]? That's sure a lot of time. . . .

Appx1153 at 102:15-25, emphasis added.

### C. **ATEN admitted that its disproportionate litigation was motivated by revenge and improper market suppression rather than legitimate patent infringement claims.**

After admitting at trial that ATEN's lawsuit against Uniclass had reached a disproportionate level because of "animosity" against a competitor (Appx956 at 13:8-17), ATEN's counsel again confirmed at the § 285 oral argument that ATEN's litigation was brought to punish Uniclass for what ATEN felt to be an alleged breach of a license which was not a cause of action in the case:

> Your Honor, they also brought up this idea of a revenge case. There was a license agreement here. They completely walked away from it. What recourse did the plaintiff have here to assert their rights? They had to bring this case to assert those rights, Your Honor. They were completely justified in doing that.

Appx1292 at 9:12-17. Importantly, the underlying case that ATEN brought was an unsuccessful patent infringement suit against Appellants, and not a breach of license cause of action. Further, even if ATEN had a legitimate cause of action, it still was required to adhere to rules of proportionality. ATEN's stated animosity towards Uniclass drove it to drastically increase the costs of litigation on all parties and was an improper motive for bringing its lawsuit. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 2015 WL 12733442, at *2 (C.D. Cal. Mar. 10, 2015) (awarding fees and expenses when "evidence at trial showed that this litigation was

at least in part motivated by Plaintiff's desire for 'payback' for Defendant's successful competition in the marketplace. . .") A § 285 attorney fee award is appropriate "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Octane Fitness*, 134 S.Ct. at 1758 (internal quotation marks and citation omitted).

ATEN's disproportionate litigation against Uniclass is not an isolated incident. In the past eight years, ATEN has sued or threatened a lawsuit to obtain a license against Belkin, StarTech, Trendnet, Zonet, and Uniclass, all of which are ATEN's competitors. Appx99-106. ATEN forced Belkin to spend an estimated one to two million dollars in legal fees before dropping its case without receiving any settlement or license fee.  Appx104 at ¶ 122; Appx981 at 65:20-66:10; Appx986 at 86:18-87:7; Appx987 at 91:19-24.

> ### D. It was error for the district court to ignore its own conclusions and find that ATEN's disproportionate litigation and trial behavior did not make the case stand out from others.

While district courts receive some deference in their decision to grant or deny attorney's fees, this deference "is not absolute." *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1359 (Fed. Cir. 2017). "When a district court bases its decision on a clearly erroneous view of the evidence, as it did here, the court abuses its discretion in denying fees." *Id.* Here, the district court clearly and accurately concluded that ATEN's litigation and trial behavior was set apart from ordinary litigation. The

district court made its remarks contemporaneously while personally observing ATEN's unreasonable litigation tactics. The district court's remarks were raised in the underlying briefing and at the oral argument. Appx241; Appx1290 at 7:11-20. The plain inconsistencies between the district court's conclusion that it had "just never seen anything like" ATEN's litigation behavior, and ultimately holding that ATEN's case did not "stand[] out from others" cannot be squared and should be reversed on appeal. *Octane Fitness*, 134 S.Ct. at 1755; Appx1153 at 102:15-25. This inconsistency is an abuse of discretion based on a "clearly erroneous" application of the evidence to § 285. *Highmark Inc.*, 134 S.Ct. at 1748 n.2 (quotation marks and citation omitted).

## II.    ATEN'S NUISANCE VALUE DAMAGES CLAIM COULD NOT JUSTIFY THE DISPROPORTIONATE EXPENDITURE OF JUDICIAL AND PARTY RESOURCES.

### A.    ATEN's lost profits claim was knowingly baseless, brought in bad faith, and rejected at summary judgment.

The deep flaws in ATEN's damages case reveal that ATEN's litigation strategy was improperly motivated by its desire for 'payback' for Appellants' successful competition in the marketplace and to outspend Appellants into extinction, rather than seeking a remedy for a legitimate cause of action. The district court erred by failing to weigh ATEN's frivolous damages methodology and its own characterization of unreasonableness as part of a totality-of-the-circumstances analysis. *See AdjustaCam, LLC*, 861 F.3d at 1362. Finally, the punitive nature of

ATEN's feigned settlement offers—seeking more than it could ever be awarded at trial—should have played a role in the evaluation of whether this case was exceptional. *Id.*

ATEN's expert damages report purported that ATEN was entitled to over $3 million in lost profits, an amount that it used to justify the expense of the case. Appx94 at ¶ 81. However, ATEN knew that this position was frivolous, even before presenting it, because its damages expert, Mr. Snell, admitted that he "ha[d] not been able to identify market share data that would allow [him] to estimate the portion of sales that ATEN would have made." Appx88 at ¶ 56. Mr. Snell, lacking the data necessary for him to perform the key aspect of the lost profits analysis, invented an alternate theory of product "mapping," where he attempted to link Uniclass products to similar ATEN products by sales volume. Appx88-92 at ¶¶ 56, 64, 71. As the district court noted, "[b]ecause Snell does not have any independent qualifications to make a comparison of KVM switches, the inference is that he relied solely on ATEN to decide which of ATEN's products are sufficiently similar to Uniclass products to essentially swap them out in the market." Appx140.

By using his alternative and novel "mapping" theory, Mr. Snell concluded that ATEN would have made *every* sale that Uniclass made but for Uniclass' alleged infringement. Appx88-92 at ¶¶ 56, 64, 71; Appx139-140. This conclusion dissolved under Mr. Snell's admission that there were other unaccounted for competitors in

23

the market and that consequently, ATEN would have had to compete with those competitors for the sales that Uniclass made, negating the "but for" causation. Appx88 at ¶ 56 (Mr. Snell acknowledging that the accused products competed with third parties' products); Appx972 at 30:7-12 (Mr. Snell testifying that ATEN had other competitors besides ATEN); *see also* Appx781-782 at 20:25-22:1 (ATEN's Head of OEM testifying of the competitive nature of the OEM market); Appx1261 (ATEN's 2015 Annual Report identifying ATEN's main competitors).

The district court flatly rejected Mr. Snell's theory reasoning that "[b]y only 'mapping' Uniclass products to ATEN products, Snell omits a critical analytical step. To be complete, ATEN and Snell would need to map other competitor products in the KVM switch OEM market in the United States that also correspond to the Uniclass and ATEN products." Appx140.

Mr. Snell's lost profits opinion additionally failed to satisfy the *Panduit* requirement for accounting for abundant, non-infringing design-arounds. *See Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). Mr. Snell similarly failed to acknowledge that some or all of Uniclass' sales to ATEN's licensees were acceptable non-infringing substitutes and should not have been included in ATEN's lost profits figure.

ATEN asserted its wholly insufficient lost profits position to prop up the magnitude of its infringement case. The district court rejected it out of hand, finding

that it relied on "multiple layers of guesswork" and "does not embody the use of sound economic principles." Appx140. The district court found that ATEN's failure to properly account for the other competitors could not "prevent the hypothetical from lapsing into pure speculation. . ." *Id.*, citing *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). The district court concluded, "[i]n sum, Snell testifies to no factual basis for concluding that ATEN would have made Uniclass' sales in a multi-competitor market where he admits there is a dearth of factual data." Appx141.

### B. **ATEN's royalty claims amounted to nuisance values highlighting its disproportionate litigation tactics and revealing its revenge agenda.**

ATEN's would-be lost profits claim allowed it to expand and prolong the case to obtain unnecessary discovery, maintain unsupportable arguments, and frivolous claim construction positions. When ATEN's lost profits position died, scrutiny turned to its unsupportable reasonably royalty theory.

ATEN made no attempt to apply the traditional *Georgia-Pacific* facts, or any other acceptable method of calculation, to its reasonable royalty position. *See generally* Appx932-933 at 128:3-129:6; Appx973 at 34:4-35:2; Appx981 at 68:1-12; Appx932 at 127:15-128:2. The thrust of Mr. Snell's reasonable royalty theory was that a single license/settlement between Uniclass and ATEN in 2009 should be examined—rather than the half a dozen other relevant licenses and attempts to

25

license. Appx925 at 97:15-18. With nothing to fall back on, Mr. Snell stated that he simply *assumed* that the parties had integrated a *Georgia-Pacific* analyses in negotiating the May 2009 license. Appx973 at 34:17-35:2. ATEN failed to provide any evidence to establish that any such analysis had been conducted by either party. Instead, Mr. Snell dedicated a significant amount of trial time reading undisputed product and revenue numbers and then recited a rote application of royalty from the May 2009 license to the revenue base. Appx967-970 at 9:5-21:1. This non-rigorous and wasteful exercise provided no evidentiary basis for a reasonable royalty. Without a sincere damages theory, ATEN forced Appellants to spend millions of dollars in legal and expert fees to defend themselves.

### C. **ATEN filed and maintained its lawsuit against Uniclass' customers through trial despite minimal reasonably royalty damages at stake.**

ATEN sued several of Uniclass' customers and kept them in the case through trial despite an unusually low damages claim. At trial, ATEN's damages expert testified that Airlink 101, one of the customer defendants owed $6,818 at most in damages. Appx971 at 26:11-13. Mr. Snell also testified that if the contested notice date for infringement was changed, then the maximum damages for which Airlink would have been liable was only $261. Appx975 at 41:8-12. Under Uniclass' reasonable royalty position, this figure was even lower.

Recognizing that it was absurd for these customer defendants to go to trial, Appellants filed a Motion to Sever and Exclude Claims against Defendants other

26

than Uniclass Technology Co., Ltd. Appx142. ATEN vigorously opposed that motion. Appx149. By trial, ATEN did not even assert that there were any infringing products against some of Appellants. Rather than dismissing those parties against which ATEN had no claim, ATEN attempted to *add* accused products for the first time in the jury instructions days before trial, spurring unnecessary briefing and argument on the eve of trial. Appx276 at ¶ 143. At trial, ATEN did not call any witnesses from the customer defendants and did not present any evidence related to the alleged infringement of those companies. Appx275 at ¶ 140.

Through a series of calculated decisions, ATEN used patent infringement litigation to improperly force its competitors to spend millions of dollars defending themselves, despite the limited damages at stake, which demonstrates that ATEN's litigation was at least in part motivated by its animosity towards Appellants rather than a valid and legitimate attempt to enforce its patents. The district court recognized how unreasonable this was but erred in denying Uniclass its request for fees under 35 U.S.C. § 285.

## CONCLUSION AND RELIEF SOUGHT

For the above reasons, the district court's Order denying Uniclass' motion for exceptional case determination under 35 U.S.C. § 285 should be reversed and remanded for further proceedings to determine the full extent of the attorney's fees owed to Uniclass.

Dated:      November 2, 2018           Respectfully submitted,

*/s/ Robert E. Aycock*
Robert E. Aycock
Joseph G. Pia
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
(801) 350-9000

*Counsel for Appellants*

# ADDENDUM

a.  Opinion and Order by the district court denying Defendants' Motion for Exceptional Case Determination Under 35 U.S.C. § 285 (Appx1-7)

Case 18-1922    Document 24    Page: 38    Filed: 11/02/2018

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|---|---|---|---|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

**Proceedings:** **[IN CHAMBERS] ORDER RE DEFENDANT'S MOTION FOR EXCEPTIONAL CASE DETERMINATION UNDER 35 U.S.C. § 285 (DKT. 479)**

Before the Court is Defendants Uniclass Technology Co., Ltd., Electronic Technology Co., Ltd. of Dongguan Uniclass, Airlink 101, Phoebe Micro Inc., Broadtech International Co., Ltd. D/B/A/ Linkskey, Black Box Corporation, and Black Box Corporation of Pennsylvania's (collectively, "Defendants") Motion to Declare this Case Exceptional Under 35 U.S.C. § 285. (Dkt. 479.) Plaintiff ATEN International ("ATEN") has filed an Opposition (Dkt. 483) and Defendants have filed a Reply (Dkt. 484).

Defendants had also filed an Application to the Clerk to Tax Costs. (Dkt. 473.) Plaintiff filed objections (Dkt. 480) and Defendants responded to those objections (Dkt. 482). After the Hearing on Defendants' Motion, Defendants filed a Second Application to the Clerk to Tax Costs that appended a Joint Stipulation from the parties stating that they agreed to Defendants' Revised cost request. (Dkts. 488, 488-1.)

Defendants' Motion (Dkt. 479) is DENIED. Plaintiff's objections to Defendants' Application to the Clerk to Tax Costs are DENIED AS MOOT.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|---|---|---|---|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

## 1. LEGAL STANDARD

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Accordingly, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Relevant factors may include: frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* A party must prove its entitlement to fees by a preponderance of the evidence. *Id.* at 1758.

## 2. ANALYSIS

### 2.1 Timeliness of Defendants' Motion and Application for Costs

Plaintiff first urges the Court not to consider Defendants' Motion or Defendants' Application to Tax Costs at all, arguing that both were filed untimely. (Dkt. 483 at 1–2; Dkt. 480 at 1–2.) Plaintiff doesn't argue that it's suffered any prejudice as a result of the couple of hours of delay in the filing of Defendants' Motion. And while maybe it's more notable that Defendants' Application to Tax Costs came a few weeks after the 14-day Local Rule deadline, Defendants' delay was apparently due to a mistaken belief that Plaintiff had agreed to an extension of time for Defendants to file both their Motion and their Application to Tax Costs. (*See* Dkt. 482 at 1.) This is evidenced by the fact that Defendants filed their Application on the agreed deadline for Defendants to file their Motion. Again, Plaintiff doesn't argue that it's suffered any prejudice as a result of this late filing. Under the current circumstances, the Court excuses Defendants' purported untimeliness and considers the merits of the disputes on Defendants' Motion and Application to Tax Costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|----------|----------------------|------|----------------|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

### 2.2 Defendants' Motion for Attorney Fees

After the conclusion of an eight-day jury trial in this case, the jury ultimately returned a verdict finding that Defendants' accused products did not infringe the asserted claims of Plaintiffs' four asserted patents either directly or indirectly. (Dkt. 448.) The jury further found that the asserted claims of two of the asserted patents were invalid. (*Id.*) The Court, however, granted Plaintiff's Motion for Judgment as a Matter of Law as to one of the two invalidated patents, finding insufficient evidence in the record to support the jury's finding that Defendants had met their burden of proving invalidity by clear and convincing evidence. (*See* Dkt. 481.) Plaintiff does not dispute that on the current record, Defendants are the prevailing party and thus entitled to seek attorney fees. (*See generally*, Dkt. 483); *see* 35 U.S.C. § 285.

Defendants bring a litany of arguments that Plaintiff's conduct, both leading up to and during this lawsuit, was exceptional and thus entitles Defendants to attorney fees. (*See generally*, Dkt. 479-1.) The whole slew of Defendants' position and arguments are best encapsulated by one very long sentence in the Introduction section of Defendants' reply brief:

> ATEN's disproportionate litigation strategy included accusing 127 products without investigating the products or claims, forum shopping to relitigate settled claim construction issues and avoid this Court, asserting an erroneously issued patent claim, accusing different products from the ones its expert examined and refusing to amend its contentions when it was notified of this mistake, switching counsel over five times without ensuring continuity, presenting a damages case that relied on "multiple layers of guesswork," filing Final Infringement Contentions in violation of the Court's Standing Patent Rules ("S.P.R."), presenting contradictory expert opinions that obfuscated its infringement and validity positions, attempting to change agreed-upon product groupings days before trial, outspending any potential recovery to overwhelm a small competitor, and other misbehavior that unnecessarily increased costs for the Court, the public, and Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|---|---|---|---|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

(Dkt. 484 at 1–2.) Plaintiff disputes these characterizations of its actions and motivations in litigating this case. (*See generally*, Dkt. 483.)

At first glance, Defendants' list of purported atrocities looks onerous. But Defendants' supporting arguments reveal that for the most part, Defendants would fault Plaintiff for rather unexceptional behavior. From the Court's perspective, Defendants' strategy with its § 285 Motion seems to be to throw out as many different aspects of Plaintiff's behavior as it can to support its fee request and "see what sticks." But it would be both tedious and wasteful for the Court to consider each and every individual tree when it should be looking at the landscape in the bigger forest. It's the *totality* of the circumstances that matters, not each circumstance considered in isolation. *Octane Fitness, LLC*, 134 S. Ct. at 1756. And while perhaps true that Plaintiff had some shortcomings in its litigation and pre-litigation conduct and positions, the Court is unconvinced that those shortcomings amount to a showing that Plaintiff's behavior was exceptional, amounting to the type of unreasonableness discussed in *Octane*.

Although not the only factor, *Octane* urges courts to think about the need in particular circumstances to advance considerations of compensation and deterrence. The Court is not persuaded that either of those considerations exist here. Instead, some rhetorical questions came to mind during a review of Defendants' insistent arguments:

- Should a patent owner be precluded from bringing all of its patent infringement disputes, simply because there are a lot of them? Aren't there avenues for the Court and the parties to streamline litigation in those instances, if properly sought out by a party or parties?
- Assuming a plaintiff has a legal basis to sue in a particular forum, should a plaintiff be deterred from choosing to sue in that forum, even absent evidence of malintent?
- Should a party be punished for choosing to change counsel? And related to that question, is it really that hard to 1) create a written record of communications (and agreements) with opposing counsel; and 2) remind (new) opposing counsel of that written record during later correspondence?

Case 18-1922    Document 24    Page 42    Filed 11/02/2018

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|---|---|---|---|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

- Does a party act unreasonably when it refuses to agree to move a trial date, where the opposing party has a dispositive motion pending (opposed by the party) that the opposing party thinks will resolve issues related to the trial?
- Does a plaintiff act unreasonably when, after discovery has closed and the parties have already conducted a source code review, plaintiff and defendant agree that plaintiff can do additional source code review, and plaintiff agrees to pay for costs associated with the additional source code review?

There was a single question, however, that kept reemerging:

- If Plaintiff's position was really that much of a problem or put that much of an unreasonable burden on Defendants, why didn't Defendants raise the issue with the Plaintiff or the Court (sooner)?

A party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its "parade of horribles" after all is said and done. That is the tenor of many of Defendants' arguments here. Or alternatively, where Defendants did come forward at some point and challenged Plaintiff's positions with some success, Defendants have not proven that they have been exceptionally wronged--they got at least some of the relief they sought. And Plaintiff's behavior was not exceptional simply because it lost on those issues.

Probably the most concerning of Defendants' arguments, and the only one the Court will specifically address, is the notion that Plaintiff failed to conduct an adequate pre-filing investigation. (*See* Dkt. 479 at 3–5; Dkt. 484 at 3–5.) Defendants' scatter-shot approach to this specific argument is typical of much of Defendants' Motion, so it also serves as a good example in that regard. Defendants' prelitigation argument relies on connecting the dots from actions Plaintiff took during litigation. For instance, Defendants argue that Plaintiff filed insufficient initial infringement contentions, Plaintiff stalled in disclosing its final infringement theories, and Dr. Lavian improperly failed to inspect all of the accused products. (Dkt. 479 at 3–4.) In opposition, Plaintiff states it "conducted a good-faith pre-filing investigation and filed this lawsuit <u>after</u> Uniclass breached a license agreement involving some of the asserted patents." (Dkt. 483 at 4 (emphasis in original) (citing Tr. Ex. 5).) Plaintiff also addresses Defendants' particularized arguments, including an emphasis that

Case 18-1922   Document 24   Page 43   Filed 11/02/2018

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|----------|----------------------|------|----------------|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

Dr. Lavian only joined the case after Plaintiff's original technical expert died, and thus was not involved in any pre-filing investigation. In reply, Defendants fault Plaintiff for not including evidence such as a declaration from an expert to support its assertion that it conducted an adequate pre-filing investigation.

First and foremost, Defendants' affirmative arguments regarding the sufficiency of Plaintiff's original infringement contentions and late-disclosed infringement theories leads the Court to again ask its number one reemerging question. (*I.e.*, why didn't Defendants raise its concerns with the contentions sooner?). The Court doesn't believe Defendants' belated arguments regarding Plaintiff's contentions are sufficient to prove that Plaintiff conducted an insufficient pre-filing investigation. Second, also notably, Defendants don't re-raise the point about Dr. Lavian. Enough said there. Defendants simply haven't persuasively proven, by a preponderance of the evidence, that Plaintiff failed to conduct an adequate pre-filing investigation. Importantly, the burden is on Defendants–not Plaintiff–to make such a showing on this Motion.

At the hearing, Defendants re-emphasized four additional arguments from their brief to support their argument that Plaintiff made an inadequate pre-filing investigation. But these arguments similarly focused on picking apart small details of the litigation and Plaintiff's conduct. For instance, Defendants argued that Plaintiff improperly asserted a particular claim of a particular patent (that also had other asserted claims) for four months. In the grand scheme of litigation, four months is not always a significant amount of time. This is particularly true where, as here, it was a single claim out of the many claims Plaintiff chose to assert. Similarly, Defendants would fault Plaintiff for arguing claim construction positions for a particular patent because the Court adopted an earlier construction rather than engaging with Plaintiff's arguments. Defendants have not explained how Plaintiff was to know that the Court would ultimately make that choice rather than reconsidering the previous constructions. Defendants' remaining arguments similarly fail to demonstrate that, considering the totality of the circumstances, Plaintiff's behavior was exceptional.

After considering the parties' arguments, evidence, and the totality of the circumstances, the Court finds that Defendants have not shown by a preponderance of the evidence that this is an exceptional case and that Defendants are entitled to attorney fees. Defendants' Motion is DENIED.

Case 18-1922    Document 24    Page: 44    Filed: 11/02/2018

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-04424-AG (AJWx) | Date | March 30, 2018 |
|---|---|---|---|
| Title | ATEN INTERNATIONAL CO. v. UNICLASS TECHNOLOGY ET AL. | | |

### 2.3 Defendants' Application to Tax Costs

Defendants sought costs for numerous items. Plaintiff raised some objections. The only item that Defendants responded about involves witness travel expenses during trial. At the hearing, the Court ordered Defendants to file supplemental documentation to support their position on these expenses. Instead, Defendants filed a Second Application to the Clerk to Tax Costs that included a Joint Stipulation by the parties to accept Defendants' Revised Application. (Dkts. 488, 488-1.) The Court DENIES Plaintiff's objections as MOOT.

## 3. CONCLUSION

Defendants' Motion (Dkt. 479) is DENIED. Plaintiff's objections to Defendants' Application to the Clerk to Tax Costs are DENIED AS MOOT.

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **CORRECTED OPENING BRIEF**

**FOR APPELLANTS** with the Clerk of the United States Court of Appeals for the

Federal Circuit via the CM/ECF system and served a copy on counsel of record this

1st day of November, 2018 by the CM/ECF system and by electronic mail to the

parties on service list below:

Laurence M. Sandell
Lei Mei
MEI & MARK LLP
818 18th Street NW, Suite 410
Washington, DC 20006
Telephone: (888) 796-1173
lsandell@meimark.com
mei@meimark.com

Dated:          November 2, 2018          */s/  Robert E. Aycock*
                                          Robert E. Aycock
                                          *Attorney for Appellants*

# CERTIFICATE OF COMPLIANCE

Counsel for Appellants hereby certifies that:

1.      The brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because exclusive of the exempted portions it contains 6,617 words as counted by the word processing program used to prepare the brief; and

2.      the brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2016 in a proportionally spaced type face: Times New Roman, font size 14.

Dated:      November 2, 2018            */s/  Robert E. Aycock*
                                        Robert E. Aycock
                                        *Attorney for Appellants*