**2018-1922**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ATEN INTERNATIONAL CO., LTD.,

*Plaintiff-Appellee,*

*v.*

UNICLASS TECHNOLOGY CO., LTD., ELECTRONIC TECHNOLOGY CO., LTD., AIRLINK 101, PHOEBE MICRO, INC., BROADTECH INTERNATIONAL CO., LTD. D/B/A LINKSKEY, BLACK BOX CORPORATION, BLACK BOX CORPORATION OF PENNSYLVANIA,

*Defendants-Appellants.*

Appeal from the United States district court for the
Central District of California in No. 2:15-cv-004424, Judge Andrew J. Guilford

**REPLY BRIEF FOR APPELLANTS**

Robert E. Aycock
Joseph G. Pia
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
(801) 350-9000

*Counsel for Appellants*

January 3, 2019

**CERTIFICATE OF INTEREST**

Pursuant to Federal Circuit Rule 47.4, counsel for Appellants certifies the following:

1. The full name of every party represented by us is:

- Uniclass Technology Co., Ltd.
- Electronic Technology Co., Ltd.
- Airlink 101
- Phoebe Micro, Inc.
- Broadtech International Co., Ltd. d/b/a Linkskey
- Black Box Corporation
- Black Box Corporation of Pennsylvania

2. The names of the real party in interest represented by us are:

- Uniclass Technology Co., Ltd.
- Electronic Technology Co., Ltd.
- Airlink 101
- Phoebe Micro, Inc.
- Broadtech International Co., Ltd. d/b/a Linkskey
- Black Box Corporation
- Black Box Corporation of Pennsylvania

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

- Dongguan Uniclass = Uniclass Technology Co., Ltd., Electronic Technology Co., Ltd.
- Phoebe Micro, Inc. = Airlink 101
- BBox Holding Company = Black Box Corporation, Black Box Corporation of Pennsylvania

4. The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   - Pia Anderson Moss Hoyt: William B. Chadwick, Brody N. Miles
   - Pacific Law Group: Jen-Feng Lee, Kenneth K. Tanji, Jr.
   - Workman Nydegger: Matthew A. Barlow
   - Scheef & Stone: Eric C. Wood.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal (*see* Fed. Cir. R. 47.4(a)(5) and 47.5(b)) are:

   *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.,* Federal Circuit Appeal No. 18-1606.

Dated: January 3, 2019

*/s/ Robert E. Aycock*
Robert E. Aycock
*Counsel for Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iv

TABLE OF ABBREVIATIONS ........ vi

I. INTRODUCTION ........ 1

I. THE DISTRICT COURT DID NOT PROPERLY CONSIDER THE TOTALITY OF THE CIRCUMSTANCES IN ACCORDANCE WITH *OCTANE*. ........ 2

A. The district court's denial of exceptionality ignored its findings that it had "just never seen anything like" ATEN's disproportionate and improperly motivated litigation and untenable damages position. ........ 2

B. The Federal Circuit's citation to the district court's FEE ORDER in another case does not establish that the district court sufficiently considered the totality of the circumstances. ........ 4

II. UNICLASS HAS DEMONSTRATED ERROR IN THE DISTRICT COURT'S FEE ORDER. ........ 6

A. The district court erroneously failed to consider ATEN's unjustifiable and disproportionate litigation. ........ 6

B. The district court erroneously failed to consider ATEN's admitted improper motivation. ........ 13

C. The district court erroneously failed to consider ATEN's objectively unreasonable lost profits claim. ........ 17

D. The district court erroneously failed to consider ATEN's unreasonably weak reasonable royalty position. ........ 21

E. The district court erroneously failed to consider ATEN's unreasonable litigation behavior in keeping the Customer Defendants in the case despite minimal damages. ........ 25

F. Uniclass adequately raised all appealed issues to the district court. 27

III. CONCLUSION ........ 29

**CERTIFICATE OF SERVICE**

**CERTIFICATE OF COMPLIANCE**

# TABLE OF AUTHORITIES

## Cases

*Acumed LLC v. Stryker Corp.*,
551 F.3d 1323 (Fed. Cir. 2008) ....................11
*AdjustaCam, LLC v. Newegg, Inc.*,
861 F.3d 1353 (Fed. Cir. 2017) .................... 19, 20
*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
858 F.3d 1371 (Fed. Cir. 2017) ....................14
*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................10
*Edwards Lifesciences AG v. CoreValve, Inc.*,
699 F.3d 1305 (Fed. Cir. 2012) ....................11
*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
No. CV 10-812-RGA, 2014 WL 2196418 (D. Del. May 27, 2014)....................12
*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) ....................28
*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
572 U.S. 559 (2014)....................2
*Johnson & Johnson Vision Care, Inc., v. CIBA Vision Corp.*,
712 F. Supp. 2d 1285 (M.D. Fla. 2010)....................11
*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .................... 23, 24
*Merck & Co. v. Mylan Pharm., Inc.*,
79 F. Supp. 2d 552 (E.D. Pa. 2000)....................8
*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*,
626 F.3d 958 (7th Cir. 2010) ....................6
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014).................... 2, 3, 6, 13
*Stone Basket Innovations, LLC v. Cook Med. LLC*,
892 F.3d 1175 (Fed. Cir. 2018) ....................4, 29
*Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317 (Fed. Cir. 2017) ....................2
*Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-cv-00329-AG,
2015 U.S. Dist. LEXIS 91403 (C.D. Cal. Mar. 10, 2015)....................16
*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) .................... 22, 23

**Statutes**

35 U.S.C. § 283 .......................................................................................... 10
35 U.S.C. § 285 .......................................................................... vi, 2, 3, 29

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................... 9

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **ATEN** | Plaintiff-Appellee ATEN International Co., Ltd. |
| **CUSTOMER DEFENDANTS** | All Defendants-Appellants other than Uniclass Technology Co., Ltd. and Electronic Tech. Co., Ltd. of Dongguan Uniclass—i.e., Airlink 101, Phoebe Micro Inc., Broadtech International Co., Ltd., d/b/a Linkskey, Black Box Corporation, and Black Box Corporation of Pennsylvania |
| **UNICLASS BR.** | Defendants-Appellants' Corrected Opening Brief (Nov. 2, 2018) (Dkt. 24) |
| **ATEN BR.** | Plaintiff-Appellee's Response Brief (December 6, 2018) (Dkt. 28) |
| **DISTRICT COURT** | The United States District Court for the Central District of California |
| **FEE ORDER** | The District Court's Order Re Defendants' Motion for Exceptional Case Determination under 35 U.S.C. § 285 (Mar. 30, 2018) (Appx1-7) |
| **UNICLASS** | Defendants-Appellants Uniclass Technology Co., Ltd., Electronic Tech. Co., Ltd. of Dongguan Uniclass, Airlink 101, Phoebe Micro Inc., Broadtech International Co., Ltd., d/b/a Linkskey, Black Box Corporation, and Black Box Corporation of Pennsylvania |

## I. INTRODUCTION

The district court's piecemeal analysis in the Fee Order failed to properly account for the totality of the circumstances, including its own observations regarding the exceptional nature of the case, ATEN's stated improper motives behind its lawsuit, ATEN's disproportionate litigation, and ATEN's objectively unreasonable damages position. This failure constitutes an abuse of discretion, meriting reversal.

In its Response Brief, ATEN does not identify any analysis in the Fee Order that demonstrates that the district court sufficiently considered the totality of the circumstances. ATEN also fails to pinpoint anything in the record where the district court reconciled its observation that it "ha[d] just never seen anything like this." Appx1153 at 102:15-25 (referring to the disproportionate resources being spent on a case with a comparatively nominal damages theory). ATEN does not explain how the district court could look past its warning that it was "exceedingly cautious about how much I allow [ATEN] to use this courtroom and this jury." Appx14:16-24. ATEN also does not dispute that its litigation strategy was extraordinarily disproportionate or that that its stated animosity against Uniclass was a driving force behind its case. ATEN does little to salvage its frivolous damages claim. In short, ATEN cannot explain how the district court found that this case was not exceptional,

when it "stands out from the others" meeting the threshold inquiry for fee shifting. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

## I. THE DISTRICT COURT DID NOT PROPERLY CONSIDER THE TOTALITY OF THE CIRCUMSTANCES IN ACCORDANCE WITH *OCTANE*.

### A. The district court's denial of exceptionality ignored its findings that it had "just never seen anything like" ATEN's disproportionate and improperly motivated litigation and untenable damages position.

ATEN argues that the district court "ha[s] no obligation to write an opinion that reveals [its] assessment of every consideration." ATEN Br. at 18, quoting *Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1323 (Fed. Cir. 2017). However, even in *University of Utah*, "[t]he district court provided a thorough explanation for why it did not find th[at] case to be exceptional" and "provided a detailed explanation as to why it disagreed that Utah's case was objectively unreasonable." *Id.* at 1322–23. In this case, the district court made observations on the record that make a finding of fees inevitable.

The standard for shifting fees under 35 U.S.C. § 285 was substantially modified in *Octane* to warrant fees when a case merely "stands out from the others with respect to the substantive strength of a party's litigation position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC*, 572 U.S. at 554; *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014). The culmination at trial of ATEN's positions and evidence from years of

litigation led the district court to exclaim "I have just never seen anything like this," referring to ATEN's disproportionate litigation strategy and tactics that it admitted were motivated by revenge for Defendants' success in the marketplace. Appx1153 at 102:15-25. The district court explained its extreme reluctance to allow the trial to continue, stating that it was "exceedingly cautious" in permitting ATEN to misuse public resources for miniscule damages when compared to the burden on the public in hearing the case before the court and jury, and in light of the overwhelming expenses on experts and lawyers. Appx955 at 12:16-24.

These statements evidence that the "totality of the circumstances" threshold was met. *Octane Fitness, LLC*, 572 U.S. at 554. The district court erred in finding that fee shifting was not warranted by isolating each of ATEN's activities throughout the pendency of the action and then asking a series of rhetorical questions about each instance as to whether, taken alone, each was exceptional. Appx4-5. Taken piecemeal, each activity may not meet the threshold. Yet, cumulatively they certainly do, justifying the district court's exasperated utterances that this case was, if nothing else, different than others that it had seen. *Id.* at 552 ("In 1952, when Congress used the word in 35 U.S.C. § 285 (and today, for that matter), "[e]xceptional" meant "uncommon," "rare," or "not ordinary.").

ATEN highlights what the district court identified as "one very long sentence in the Introduction section of [Uniclass's] reply brief" to illustrate that the court

considered the totality of the circumstances and that its analysis was sufficiently thorough. ATEN Br. at 14-15. ATEN, however, fails to identify any place in the record where the district court reconciled its observations at trial with its ultimate conclusion of non-exceptionality. Appx1153 at 102:15-25, 12:16-24. ATEN further fails to explain how its untenable damages position factored into the totality of the circumstances. The district court's silence as to the substantive strength of ATEN's litigating position and lack of analysis on the clearly unreasonable manner in which ATEN litigated the case merits reversal.

### B. The Federal Circuit's citation to the district court's FEE ORDER in another case does not establish that the district court sufficiently considered the totality of the circumstances.

This Court's recent quotation of the district court's Fee Order in an unrelated opinion is not dispositive of whether the district court erred in its ultimate decision that this case was not exceptional. *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (quoting "[a] party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done."); Appx5.

This quotation does not bear on this appeal because Uniclass appropriately and timely raised the issues and findings it now brings on appeal. Uniclass did not "hide under a rock" and attempted to reign in the case by timely filing a motion to dismiss for lack of jurisdiction and improper venue (Appx1322 at Dec. 2, 2014), a

stipulated dismissal of the ’275 Patent (Appx1331 at Sep. 11, 2015), three motions for summary judgment (Appx1340 at Feb. 10, 2017), a motion to strike additional infringement contentions improperly disclosed through ATEN’s second expert report (Appx1338 at Jan. 30, 2017), a motion *in limine* to exclude the expert opinions of ATEN’s technical expert (Appx1345 at Feb. 27, 2017), a motion *in limine* to exclude testimony regarding breach of contract to prevent the trial from delving into the source of ATEN’s animosity (Appx1350 at May 22, 2017), a pre-trial brief that outlined ATEN’s small damages request and its ATEN’s unreasonable settlement demands (Appx1566-1568), and a stipulated dismissal of claims from the ’141 and ’287 Patents (Appx1353 at Sep. 7, 2017). Uniclass also engaged in regular and reasonable settlement discussions to stem rising litigation costs. *See, e.g.*, Appx1509. These offers were all rejected.

With regard to ATEN’s unreasonably weak damages position, Uniclass again timely filed a motion for summary judgment as to ATEN’s lost profit damages (Appx1340 at Feb. 10, 2017), a *Daubert* motion to exclude the testimony of ATEN’s damages expert, Mr. Snell, based on his unreliable methodology and conclusions (Appx1349 at May 19, 2017), and a motion for directed verdict based on ATEN’s financial expert’s failure to adequately provide any hypothetical negotiation analysis (Appx1034-1036 at 4:10-9:3).

As far as ATEN's unreasonable maintenance of the Customer Defendants in the case, Uniclass filed a motion *in limine* to exclude evidence related to the Customer Defendants (Appx1350 at May 22, 2017), a motion *in limine* to prevent ATEN from expanding product groupings on the eve of trial to keep the Customer Defendants in the case (Appx1354 at Sep. 14, 2017), and successfully dismissed one of the Customer Defendants during trial (Appx712 at 107:13-108:6). Uniclass's diligent attempts to seek relief from ATEN's exceptional litigation should not be punished because the Federal Circuit agrees with the reasoning of part of the Fees Order.

## II. UNICLASS HAS DEMONSTRATED ERROR IN THE DISTRICT COURT'S FEE ORDER.

### A. The district court erroneously failed to consider ATEN's unjustifiable and disproportionate litigation.

ATEN freely admits that in addition to the millions it spent on its 21 lawyers of record and their behind-the-scenes teams, it conceded at trial that it spent over $700,000 alone for the services of just two experts in a case worth approximately $670,000 under its own damages model. Opp. at 21; Appx1303-1307. ATEN's disproportionate manner in litigating the case should be a weighty factor in awarding fees. *See Octane Fitness, LLC*, 572 U.S. at 554; *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 965 (7th Cir. 2010) (an award of attorney's fees in a trademark case is appropriate if the losing party brought "a claim or defense

that a rational litigant would pursue only because it would impose disproportionate costs on his opponent—in other words only because it was extortionate in character if not necessarily in provable intention.”).

### 1. *ATEN’s disproportionate litigation does not demonstrate diligence.*

ATEN tries to defend its high costs by claiming that it “diligently analyzed its claims,” but ATEN provides no evidentiary link between its high costs and its self-proclaimed diligence. ATEN Br. at 21. In fact, most of ATEN’s claims and accusations were dismissed or stricken prior to trial. Appx1597; Appx1603; Appx1604; Appx1605. The district court recognized that the high costs were not indicative of diligence when it declared, “I don’t know why the plaintiff has spent over $400,000 on one expert. . . . When I was a lawyer, if I did that, I would be fired . . .”. Appx955-956 at 12:21-13:4. ATEN does address this remark in its Response Brief. It was error for the district court to overlook this factor in declining to award fees.

### 2. *ATEN cannot justify its disproportionate litigation because of the complexity of the technology or the need for extensive source code review.*

ATEN’s argument that its high costs are supported because the technology at issue is “complex” is inconsistent with and contradicted by the record. ATEN’s KVM switch technology is outdated and becoming obsolete as consumers transition to wireless alternatives such as remote desktops and Bluetooth to access multiple

peripherals simultaneously. Appx868 at 93:4-10 (some accused products require outdated monitors and connecting cables); Appx1007 171:13-14 (some accused products have only two or four buttons used to simply toggle peripherals); Appx1000 at 144:4-25 (the chips in some accused products had only about 4,000 lines of code which is "very few."); Appx1048 at 59:17-60:14 ("From a programming point of view, a 4,000-line program is a very small program."). And even if the technology was complex, ATEN was still required to keep its litigation proportionate to the needs of the case. *See Merck & Co. v. Mylan Pharm., Inc.*, 79 F. Supp. 2d 552, 557 (E.D. Pa. 2000) (recognizing that litigation techniques "disproportionate to the size and complexity of the case" may warrant an award of attorney fees).

ATEN's claim that its inflated litigation costs are appropriate because "extensive source-code review was necessary" (ATEN Br. at 21) is not supported by its litigation tactics or its own technical expert. At trial ATEN's technical expert expressly admitted that code review was unnecessary. He specifically testified that he "d[id]n't need to look at source code ***at all*** to make [his] opinion." Appx794 at 71:20-24 (emphasis added). ATEN's expert further refutes ATEN's present argument by testifying that, at most, the source code "gives another way to understand" or verify what he could ascertain from other sources such as product specifications, manuals, and testing. Appx794 at 73:1-11. Once Uniclass learned at trial that it had allowed ATEN to participate in multiple, expensive rounds of source

code review that ATEN knew to be unnecessary, it brought it to the attention of the district court in its motion for fees. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case, considering . . . the amount in controversy. . . [and] the importance of the discovery in resolving the issues.").

#### ***3. The scope of the case that ATEN brought and maintained doesn't excuse that its litigation was disproportionate.***

ATEN argues that high litigation costs were justified because the case it originally brought claimed around $10 million in damages and accused over 125 products. ATEN Br. at 21. This argument does not support ATEN's position but rather confirms Uniclass's argument that "ATEN asserted its wholly insufficient lost profits position to prop up the magnitude of its infringement case." Uniclass Br. at 24. After the district court rejected ATEN's lost profits claim and reduced the number of accused products, ATEN had a damage request of $678,337. Appx983 at 74:20-24.

ATEN's argument that its excessive litigation through the end of trial is justified because of the number of accused products and its damage request at the outset of its case is unreasonable and not supported. ATEN's original $10 million damages figure was premised on a lost profits position not supported by law or fact, and an unlikely request for treble damages. The lost profits opinion was dismissed almost five months before trial (Appx136-141) and most of the accused products and claims were eliminated from the case approximately six months before trial

(Appx1474-1479). Even after ATEN's recovery was decimated, ATEN refused to settle. Instead, it plowed ahead, demanding a two-week jury trial to unsuccessfully seek relief on a very small patent case. It is estimated that ATEN's litigation expenditures from the time its lost profits claim was dismissed to the end of trial exceeded ATEN's potential recovery.

#### *4. ATEN cannot justify its disproportionate litigation because of its request for injunctive relief.*

ATEN also claims that its litigation costs were reasonable because it was seeking "important injunctive relief." ATEN Br. at 21. This explanation is hollow. When ATEN's lost profits position was rejected, ATEN's request for injunctive relief was largely gone. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). The tenets of *eBay* are well known, including the basic proposition that injunctions are not automatic, but instead are a question of equity. 35 U.S.C. § 283. If ATEN had been able to show infringement of a valid claim, which positions were categorically denied by the district court and jury, then it would have been required to prove that (1) it would suffer an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships between the parties favors the plaintiff; and (4) the public interest would not be disserved. *eBay Inc.*, 547 U.S. at 391. ATEN made no genuine attempt to prove any of these factors.

From the outset, ATEN was faced with a serious hurdle in obtaining an injunction, namely, it had agreed to license its patents to alleged infringers across the industry, in some instance without payment. Appx1139 at 45:4-14 (listing the royalty rates in ATEN's licenses with its competitors.) Generally, a patentee's broad licensing of its patent rights is "inconsistent with [its] assertion that only enforcement of its rights to exclude" would adequately address its harm. *Johnson & Johnson Vision Care, Inc., v. CIBA Vision Corp.*, 712 F. Supp. 2d 1285, 1289 (M.D. Fla. 2010); *cf. Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (a patentee's willingness to license its patent is "but one factor for the district court to consider."). Indeed, ATEN's primary form of relief was seeking a reasonable royalty based on a royalty rate from a license it had entered with Uniclass, which along with licenses to five other competitors, shows ATEN's willingness to license, negating the irreparable harm prong. In these instances, a reasonable royalty rate is generally provided *instead* of an injunction, and not in addition to an injunction. *See Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1315 (Fed. Cir. 2012). And even if ATEN would have been successful, the injunctive relief was relatively minor, considering the limited sales at issue.

**5. *ATEN cannot escape the district court's statements regarding the disproportionality of its litigation.***

The district court's statements support Uniclass's contention that ATEN's litigation was unreasonably disproportionate. Although there is no damages limit to

bring a patent infringement case, there are still concerns over requiring substantial resources from the public and the parties in resolving a small case:

> We're asking a lot of these citizens. We're asking a lot of this courtroom. We're asking a lot of free services to be provided to you, and I'm not sure it makes sense to be providing free services of $700,000 in a $650,000 case. I don't know why this case hasn't settled. I don't know why [ATEN] has spent over $400,000 on one expert. That makes me exceedingly cautious about how much I allow you to use this courtroom and this jury.

Appx955 at 12:16-20.

As Plaintiff, ATEN was the master of its case and largely dictated the scope of the litigation. ATEN sought access to public resources in its quest for relief. Accordingly, the district court's concern over the public resources being expended on a small case was directed to ATEN, and not to both parties.

To the extent the district court chastised the parties for not settling, that blame falls squarely on ATEN for refusing to settle for less than its maximum recovery at trial. *See EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. CV 10-812-RGA, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) ("[T]here may be cases where a party's approach to settlement is so unreasonable as to justify an 'exceptional' finding."). By contrast, Uniclass's pre-trial offer of $150,000 (Appx1509) and its increased offer during trial are very reasonable, especially considering the jury did not award ATEN any recovery. Appx206.

### B. <u>**The district court erroneously failed to consider ATEN's admitted improper motivation.**</u>

A party's motivation for bringing a patent infringement case is relevant to the district court's determination of exceptionality. *Octane Fitness, LLC*, 572 U.S. at 555. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. Here, ATEN admitted its impure motives for bringing the litigation to the district court, yet the district court failed to consider those motives in its exceptionality analysis. ATEN presents a handful of arguments to try to justify this failure, none of which withstand scrutiny.

#### 1. ***ATEN brought its lawsuit to punish a competitor for an alleged breach of contract and not because of a good-faith belief in a patent infringement position.***

ATEN argues that it is entitled to a presumption that it was justified in asserting its patents. ATEN Br. at 24-25. But ATEN has declared on numerous occasions that its motives for bringing suit were tied to a perceived breach of contract by its competitor rather than a good-faith belief in patent infringement. At trial, ATEN explained:

> These two parties are competitors. And as you heard during the testimony so far and I think you'll hear some more this week about that agreement that was stopped payment on. <u>**I won't say breach, but there was the stop payment on, and there's I think some animosity here**</u>.

Appx956 at 12:15-13:7 (emphasis added). At the § 285 hearing, ATEN again verified that its case was based on an alleged breach of a license agreement and an

assertion of its contract rights rather than a strong infringement position. Appx956 at 13:8-17 ("There was a license agreement here. They completely walked away from it."). And now in its Opposition, ATEN still justifies its litigation by claiming that "it was Uniclass who breached the parties' patent license agreement, forcing ATEN to file this lawsuit." ATEN Br. at 23 (citations omitted).

Seeking relief for an alleged breach of contract is a far cry from the "motivation to implement the statutory patent right by bringing suit." ATEN Br. at 24 (quoting *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017)). This is particularly true because the contract at issue had a choice of venue claim requiring that all relief stemming from the breach of contract was to be handled in Taiwan. Appx1231 ("The Parties agree that all actions or proceedings to resolve any controversy or claim arising out of or relating to this Agreement, A Party's performance of failure to perform hereunder, shall be litigated exclusively in courts of competent jurisdiction in Taiwan."). Concerned that ATEN would try to conflate its animosity over an alleged breach of contract with the patent infringement issues at trial, Uniclass filed a motion *in limine* to exclude any claim or evidence of breach of contract, that the district court granted. Appx1542-1546; Appx1594.

Even if ATEN's infringement case initially had a presumption that it was brought in good faith, ATEN's own statements and conduct negate that presumption. Uniclass also strongly challenged that presumption based on ATEN's own

contradictory statements at trial and the § 285 hearing, the district court's statements during trial, the weakness of ATEN's damages theories, and ATEN's excessive costs compared to the small potential recovery. ATEN's only defense to that challenge is that some of its claims survived summary judgment. ATEN Br. at 24. Even if some of its case survived summary judgment, ATEN's repeatedly stated improper motives for bringing its case eliminate any lingering presumption of good faith.

ATEN's argument that Uniclass mischaracterized the record below in turn mischaracterizes Uniclass's argument. For instance, Uniclass argued that the district court observed ATEN's disproportionate litigation and that ATEN admitted that it was motivated by revenge. Uniclass Br. at 17, 18. ATEN has not repudiated its counsel's statements about its motives.

#### ***2. The District Court should have considered ATEN's statements, made through its counsel, regarding its improper motivation.***

In response to a point-blank question from the district court regarding ATEN's motivation behind its case, ATEN, through counsel, admitted that its disproportionate litigation costs were a result of "animosity" toward Uniclass. Appx956 at 13:8-17. Months later, during the hearing on the fees motion, ATEN's counsel confirmed that ATEN's justification for bringing its suit was not based on a good-faith belief of patent infringement, but on an alleged breach of contract—there was no breach of contract claim brought in this case, and the Court granted a motion

*in limine* precluding ATEN from arguing a breach of contract at trial. Appx1292 at 9:12-17; Appx1594.

ATEN argues that these confessions should be discounted because they were made by counsel and not by an ATEN witness. Opp. at 23. But ATEN did not recant these statements made by its representative.

#### 3. *Animosity between litigants cannot be the justification for a lawsuit.*

ATEN claims "animosity between litigants embroiled in a years-long case is far from uncommon." Opp. at 23. Maybe so, but such animosity cannot be the driving force behind the litigation; rather, the substantive strength of the case is at issue. Here, the results of improperly motivated litigation were so apparent that the Court addressed them during trial, warning ATEN that "this is a courtroom that resolves disputes and doesn't necessarily vindicate revenge amongst competitors." Appx956 at 13:20-21.

ATEN argues that its animosity towards Uniclass is "far different" from the "smoking-gun" email presented in *Universal Elecs., Inc. v. Universal Remote Control, Inc.,* No. 12-cv-00329-AG, 2015 U.S. Dist. LEXIS 91403 (C.D. Cal. Mar. 10, 2015). ATEN Br. at 25. The sum of ATEN's argument is that "ATEN made no such statements here" that were made in the *Universal* email. ATEN Br. at 25. ATEN provides no authority that the contents of the *Universal* email reflects the minimum

threshold for evidence of improper motivation. Nor does ATEN support that its admissions made in open court are insufficient to establish its improper motive.

### C. The district court erroneously failed to consider ATEN's objectively unreasonable lost profits claim.

#### *1. Uniclass demonstrated that ATEN's lost profits claim was objectively unreasonable or exceptionally meritless.*

ATEN's lost-profits claim was completely rejected at summary judgment because it "does not embody the use of sound economic principles" and it relies on "multiple layers of guesswork." Appx140. While not all positions rejected at summary judgment are so weak as to be exceptional, ATEN's lost profits position was objectively unreasonable. ATEN was not required to maintain its lost profits claim and should have dropped it once its expert notified it that he "ha[d] not been able to identify market share data that would allow [him] to estimate the portion of sales that ATEN would have made," an essential determination for a lost profits opinion. Appx88 at ¶ 56. The district court's failure to give significant weight to the frivolousness of this position in its Fee Order was clear error.

#### *2. Uniclass's challenge to ATEN's lost profits opinion was sufficiently presented to the district court.*

ATEN argues that Uniclass did not dedicate enough space in its underlying brief regarding ATEN's lost profits position to support arguing on appeal that it was abnormally weak, improperly motivated, and that it allowed ATEN to expand and prolong its case. ATEN Br. at 29, 32-33. This is simply incorrect.

ATEN's damages expert admitted that he lacked sufficient data to undertake the market share analysis necessary to determine lost profits; that he invented an alternate theory of product mapping, which the district court ruled used "multiple layers of guesswork" and "does not embody the use of sound economic principles"; that he admitted that ATEN has competitors other than Uniclass, but ignored those competitors in his analysis and concluded that ATEN would have made every sale that Uniclass made but for Uniclass's alleged infringement; and that he failed to conduct a sufficient *Panduit* analysis by ignoring the many, acceptable non-infringing design-arounds to the patents-at-issue. Appx239, Appx470-471.

Uniclass's request for fees emphasized that ATEN's case was improperly motivated. Appx221 (granting fees would "deter[] ATEN from undertaking other litigation that was at least motivated in part by ATEN's desire for "payback" for successful competition in the market place."); Appx240-242 (analyzing ATEN's remarks and the district court's observations regarding the "animosity" and "revenge amongst competitors" in the litigation.) Uniclass maintained this argument at the hearing on its motion. Appx1289-1291 at 6:23-9:25.

Likewise, Uniclass argued that "ATEN prolonged this case by presenting frivolous and unreasonable damages positions." Appx239. Uniclass dedicated pages to arguing that ATEN's litigation strategy (including its lost profits position) "produced disproportionately high legal fees in relation to the requested damages."

Appx240-241; Appx471-472; *see also* Appx451-452 ("ATEN's disproportionate litigation strategy included . . . presenting a damages case that relied on 'multiple layers of guesswork.'" Uniclass adequately presented the arguments below, and ATEN's argument to the contrary should be rejected.

### *3. Uniclass correctly represented the record below.*

ATEN clings to the fact that the Court did not expressly call its lost profits frivolous. ATEN Br. at 30. However, ATEN cannot refute that the district court expressed concerns that the analysis was sliding into "pure speculation," was "not based on sound economic principles," and relied on "multiple layers of guesswork." Appx139-140. The district court's unambiguous denunciation of Mr. Snell's lost profits opinion is tantamount to calling the position frivolous.

ATEN also appears to argue that because the district court quoted one sentence from Uniclass's brief that referenced various arguments that Uniclass raised in its fee request, the district court had necessarily weighed those facts in the manner prescribed by *Octane*. ATEN Br. at 14-15. Mere reference to a party's argument and mentioning the totality of the circumstance standard does not equate to the analysis necessary under *Octane*. *See AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (reversing a district court's denial of fees because the district court provided "no analysis" of elements of the plaintiff's litigation).

#### *4. AdjustaCam is governing authority and supports the reversal of the district court's denial of fees.*

ATEN takes issues with Uniclass's reliance on *AdjustaCam* in its Opening Brief. *AdjustaCam* definitively states that the Federal Circuit's deference to the district court in deciding fee motions "is not absolute." *Id.* at 1359; Brief at 21. ATEN does not challenge this statement. *AdjustaCam* also provides that a district court abuses its discretion by denying a request for fees under § 285 when it "bases its decision on a clearly erroneous view of the evidence." *Id.*; Uniclass Br. at 21. ATEN also cannot argue with this standard.

Finally, Uniclass relies on *AdjustaCam* for the proposition that a district court clearly errs, and thus abuses its discretion, when it fails to consider a party's damages methodology as part of the totality of the circumstances when combined with other factors. In *AdjustaCam*, the district court failed to weigh AdjustCam's damages model in light of AdjustaCam's infringement position and unreasonable manner of litigation such as the district court's overlooking of its own statements made at trial, and ATEN's improperly motivated and disproportionate litigation. *Id.* at 1361–62 ("The irregularities in AdjustaCam's damages model and the purported nuisance value of many of its settlements should have played a role in the valuation of whether this is case exceptional.").

*AdjustaCam* is relevant to the current analysis and supports a reversal of the district court's decision. ATEN's damages model is rife with "irregularities" and is

exceptionally weak but was used to justify ATEN's high costs during litigation and on appeal. Uniclass Br. at 22-26; ATEN Br. 22. That alone is sufficient grounds for a finding of exceptionality because "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position ***or*** the unreasonable manner in which the case was litigated." *Octane*, at 554. Uniclass's position is further strengthened when ATEN's exceptional damages model is considered in light of its improperly motivated and disproportionate litigation. It was clear error for the district court to fail to weigh the damages model in its analysis, and its ruling should be reversed.

ATEN attempts to narrow this Court's precedent in *AdjustaCam* by requiring a showing of frivolous infringement positions before finding reversible error. ATEN Br. at 31-32. However, when *AdjustaCam* is read under the broad standard established by *Octane*, the reversal of a denial of an exceptional case should not be limited to the case-specific circumstances found in *AdjustaCam*.

**D. <u>The district court erroneously failed to consider ATEN's unreasonably weak reasonable royalty position.</u>**

ATEN's damages expert did not perform sufficient analysis on the hypothetical negotiation required to calculate a reasonable royalty, and ATEN does little to prove otherwise and provides no evidence that the district court adequately considered the deficient analysis in the Fee Order. ATEN still insists that 7.5% was a reasonable royalty for the patents in question because of one argument: ATEN and

Uniclass signed a contract that contained a 7.5% royalty provision over eight years before the trial. Appx925 at 97:15-25; ATEN Br. at 36 ("It is undisputed that ATEN and Uniclass ***actually agreed to a 7.5% royalty*** rate in 2009") (emphasis in original). Mr. Snell candidly concedes that instead of analyzing the *Georgia-Pacific* factors, he simply assumed the parties conducted their own analysis when they signed a contract for a 7.5% royalty in May 2009. Appx933 at 129:3-6 ("[T]here were no modifications I needed to make [to the royalty rate] because I would assume that the parties – like, for example, ATEN and Uniclass, when they entered into their agreements, they would have taken that into account already."); Appx973 at 34:20-35:2 ("There would be no reason to [do additional analysis on other market factors]. The parties would have already taken that into account in coming up with their royalty."). ATEN does not respond to Uniclass's claim that ATEN has not provided any evidence of the contract negotiations between the parties or whether those negotiations adequately considered the factors necessary to determining a reasonable royalty rate.

In support of its damages expert's analysis, ATEN cites a short passage where Mr. Snell provided conclusory testimony that he "went through the list of *Georgia Pacific* factors and made sure that to the extent it was necessary, that all those factors were considered in the determination of those royalties." ATEN Br. at 36, citing Appx975 at 43:14-44:2. ATEN then cites *Whitserve, LLC v. Computer Packages,*

*Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) to argue that its damages expert need not conduct any *Georgia-Pacific* analysis at all.

Even under *Whitserve*, a party is still required to provide a full analysis to determine a reasonable royalty. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009) (explaining that jurors cannot rely on "superficial testimony" with "no analysis."). Moreover, should an expert choose to use the *Georgia-Pacific* factors, as Mr. Snell testified that he did, simply "reciting each factor making a conclusory remark about its impact on the damages calculation before moving on does no more than tell the jury what factors [they] could take into consideration." *Whitserve, LLC*, 694 F.3d at 31. "Expert witnesses should concentrate on *fully* analyzing the *applicable* factors, not cursorily reciting all fifteen." *Id.* (emphasis in original). "And, while mathematical precision is not required, some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed." *Id.* Mr. Snell's reasonable royalty opinion falls unreasonably short of this standard, and ATEN's conclusory statements that his positions "were reasonable and made in good faith" are unavailing. ATEN Br. at 35.

For ATEN to conclude that the 7.5% royalty in the first May 2009 agreement between the parties was also a reasonable royalty for the distinct patent rights at issue at trial required ATEN to unreasonably overlook many key factors. For instance, Uniclass and ATEN signed a second contract ***on the same day*** in May 2009 that

superseded the first contract and lowered the royalty to 6%, but Mr. Snell did not find this second license agreement between ATEN and Uniclass relevant to his determination of a reasonable royalty. Appx980 at 61:21-62:3. Mr. Snell also declined to speak to anyone at ATEN about the meaning of the additional consideration terms in the second license agreement between ATEN and Uniclass because "[i]t wouldn't be relevant." Appx980 at 62:12-14. Mr. Snell did not consider two highly relevant licenses between ATEN and its competitors (Belkin and StarTech) to be instructive in his reasonable royalty analysis even though they covered some of the same patents asserted in this case but had no ongoing royalty. Appx975-976 at 44:18-45:6.

Mr. Snell failed to include the profitability of ATEN's patented products or Uniclass's accused products in his reasonable royalty analysis. Appx981 at 67:10-17. Similarly, Mr. Snell did not factor in the substantial costs related to litigation and the impact that threats of litigation have on a reasonable royalty rate. Appx981 at 66:4-10. Instead, Mr. Snell spent an inordinate amount of trial time reading royalty calculations straight from his slide, behavior that the district court should have considered in its totality of the circumstance analysis. *See Lucent Technologies, Inc.*, 580 F.3d at 1329 (explaining that a "damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers.") Still, ATEN was

able to secure the use of court and public resources based on its deficient reasonable royalty position.

### E. **<u>The district court erroneously failed to consider ATEN's unreasonable litigation behavior in keeping the Customer Defendants in the case despite minimal damages.</u>**

ATEN kept several of Uniclass's customers in this case for multiple years without a justifiable recovery. By trial, the damages at stake for one of the Customer Defendants maxed out at $261. Appx975 at 41:8-12. The maximum damages under ATEN's theory for all of the Customer Defendants combined was around $20,000. Appx983 at 74:20-24. ATEN admits that these damages are low, but it attempts to justify keeping Uniclass's customers in the case because it was also seeking injunctive relief against the Customer Defendants. ATEN Br. at 37. As explained in Section II.A.4, *infra*, ATEN had no basis to expect an injunction because it had established through its previous use of licenses that monetary damages were a sufficient remedy. Still, the district court erroneously did not consider these tactics in its Fee Order.

After the Court struck dozens of accused products, it became clear that ATEN lacked standing against some or all of the Customer Defendants. Appx1603. To retain claims against the Customer Defendants (even claims for only a few hundred dollars), ATEN attempted to include an additional name for the same product in its proposed jury instructions to keep the Customer Defendants. The Court, seeing the

inequity of allowing ATEN to expand its product groupings just days before trial, granted Defendants' motion *in limine* to prevent ATEN from expanding the product groupings. Appx689 at 13:7-8. Once the Court granted Defendants' motion *in limine*, ATEN had no claim against the Black Box defendants and was forced to dismiss them from trial. Appx712 at 107:13-108:6.

ATEN claims that it "never sought to add *new products* to its product groupings, but rather *additional names* for the same products already listed." ATEN Br. at 37, emphasis in original. Uniclass and the Customer Defendants often referred to the same product by different names, depending on which company was selling it. In other words, adding additional names would have allowed ATEN to expand its accusations on the eve of trial as a last-minute attempt to maintain a claim against the Customer Defendants.

ATEN's insistence on dragging the Customer Defendants through trial was unnecessary because it could have received its requested relief by pursuing damages and injunctive relief solely from Uniclass, the manufacturer and original distributor of the allegedly infringing products. Enjoining Uniclass from selling the accused products would prevent the Customer Defendants from acquiring and reselling the accused products. Rather than narrowing its case, ATEN intentionally sued Uniclass's Customer Defendants and kept them tied to the litigation, effectively driving a wedge between Uniclass and its customers. This unreasonable litigation

sets this case apart from others, but the district court made no mention of it in its Fee Order.

The denial of the motion *in limine* to exclude evidence related to the Customer Defendants doesn't weigh on the present issue. The denial simply permitted ATEN to present evidence regarding the Customer Defendants, which it declined to do. The ruling, which came before the district court was aware of ATEN's miniscule damages request against the Customer Defendants, does not excuse ATEN's unreasonable conduct.

### F. <u>Uniclass adequately raised all appealed issues to the district court.</u>

ATEN incorrectly argues that Uniclass failed to raise some arguments that it now raises on appeal. ATEN Br. at 38-40. ATEN contends that Uniclass did not argue to the district court that ATEN was seeking nuisance-value settlements. ATEN Br. at 39. But Uniclass established at the hearing on the fees motion that ATEN's damages were far below the cost of litigation and were not based on than the merits of its infringement position:

> THE COURT: You think this is a revenge case?
>
> MR. PIA: Yes. That was noted on the record by not only the responsive ATEN's counsel, but also the Court noted that. It said this is a courtroom that resolves disputes and doesn't necessarily vindicate revenge against competitors. The reason why the Court made that observation was that the total award was somewhere between 75,000 and 650,000 that ATEN was seeking, but it had spent over 700,000 alone on its experts.

> THE COURT: That's a helpful reminder. I hear you.
>
> MR. PIA: There was disproportionality. That disproportionality and several days that were used by ATEN's expert was really a result of it bringing meritless claims that it should not have maintained throughout the case. . .

Appx1290 at 7:7-24.

In its briefing, Uniclass argued extensively that the cost of litigation far exceeded ATEN's potential recovery and that the requested damages were not tied to a reasonable damages model. Appx239-244; Appx471-473. By using this strategy, ATEN "exploit[ed] the high cost to defend complex litigation" to punish its competitor while refusing to settle the limited damages claim that it had. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

ATEN disputes whether Uniclass's underlying briefing raised the argument that ATEN's lost profits claim was brought in "bad faith." As addressed in Section II.C.2, *infra*, Uniclass repeatedly developed the argument that ATEN's case, including its lost profits position, was brought for an improper motive. Appx221 (Uniclass's motion stated that granting the request would "deter[] ATEN from undertaking other litigation that was at least motivated in part by ATEN's desire for "payback" for successful competition in the market place."); Appx240-242 (Uniclass's motion analyzes ATEN's remarks and the district court's observations regarding the "animosity" and "revenge amongst competitors" in the litigation);

Appx1289-1291 at 6:23-9:25 (Uniclass's argument at the oral hearing that this was a disproportionate, revenge case).

ATEN also claims that Uniclass's argument that ATEN's extensive litigation against other competitors and the costs incurred in the Belkin litigation should not factor into the totality of the circumstances. ATEN Br. at 38-39. However, "[i]n considering the 'totality of the circumstances' in a § 285 motion, a party's similar conduct in other litigation is also relevant." *Stone Basket*, 892 F.3d at 1183.

## III. CONCLUSION

For the reasons explained above, the Court should find that the district court abused its discretion in denying Uniclass's motion for fees under 35 U.S.C. § 285, reverse the district court's decision, and remand to the district court to determine the amount of fees that Uniclass may recover.

Dated: January 3, 2019

Respectfully submitted,

*/s/ Robert E. Aycock*

Robert E. Aycock
Joseph G. Pia
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
(801) 350-9000

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **REPLY BRIEF FOR APPELLANTS** with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served a copy on counsel of record this 3rd day of January, 2019 by the CM/ECF system and by electronic mail to the parties on service list below:

Laurence M. Sandell
Lei Mei
Richard P. Hadorn
MEI & MARK LLP
818 18th Street NW, Suite 410
Washington, DC 20006
Telephone: (888) 796-1173
lsandell@meimark.com
mei@meimark.com

Dated: January 3, 2019

*/s/ Robert E. Aycock*
Robert E. Aycock
*Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE

Counsel for Appellants hereby certifies that:

1. The brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and Federal Circuit Rule 32(a) because exclusive of the exempted portions it contains 6,998 words as counted by the word processing program used to prepare the brief; and

2. the brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2016 in a proportionally spaced type face: Times New Roman, font size 14.

Dated: January 3, 2019

*/s/ Robert E. Aycock*
Robert E. Aycock
*Attorney for Appellants*